GIANSANTE & COBB, LLC
BY: LOUIS GIANSANTE, ESQUIRE
 CAROL R. COBB, ESQUIRE
23 EAST MAIN STREET
MOORESTOWN, NEW JERSEY 08057-3309
(856) 273-8866
ATTORNEYS FOR THE PLAINTIFFS



RECEIVED & FILED
OCT 18 2007
SUPERIOR COURT OF NJ
GLO. COUNTY CIVIL PART

---

MAUREEN CASEY o/b/o PC, a minor;
NANCY STEVENS o/b/o RO, a minor;
NANCY STEVENS o/b/o NO, a minor;
BONNIE & DONALD TUTTLE o/b/o JT, a minor; and DONNA WRIGHT o/b/o ZW, a minor; as individuals and on behalf of those similarly situated,

  Plaintiffs,

vs.

WASHINGTON TOWNSHIP BOARD OF EDUCATION, JOHN DOES (1-100), JOHN DOE COMPANIES (1-100), Jointly, severally or in the alternative
    Defendants.

: SUPERIOR COURT OF NEW JERSEY
: GLOUCESTER COUNTY
: LAW DIVISION - CIVIL ACTION
:
: DOCKET NO. L-1334-04
:
:
:
:
: SECOND AMENDED COMPLAINT
: CLASS ACTION AND DAMAGES
: DEMAND FOR TRIAL BY JURY
: AND DESIGNATION OF TRIAL
: COUNSEL

---

  The plaintiffs, by way of Amended Complaint against the defendants, Washington Township Board of Education, John Does (1-100), and John Doe Companies (1-100) on their on behalf, on behalf of their children, and Plaintiffs, on behalf of those similarly situated state as follows:

### I. NATURE OF ACTION

1. This is a civil action for damages and equitable relief arising from the exposure to mold, $CO^2$, and other contaminates by Defendant Washington Township Board of Education.

2. Plaintiffs Casey, Stevens, Tuttle, and Wright bring this action in their own right and on behalf of their minor children for damages

and medical and developmental monitoring as a result of exposure in the Orchard Valley Middle School.

3. Plaintiffs also bring this action on behalf of a class of similarly situated claimants in Orchard Valley Middle School for medical and developmental monitoring.

## II. CLASS DEFINITIONS

4. Plaintiffs' class is defined as:

> Past or present students who attended the Orchard Valley Middle School between the years January 2000 and June 2005.

## III. JURISDICTION

5. This Court has personal jurisdiction over all parties to this action.

6. Plaintiffs have provided defendants, Washington Township Board of Education with tort claim notices.

## IV. THE PARTIES

**Plaintiffs:**

7. Maureen Casey of 1195 Springmeadow Drive, Quakertown, Pennsylvania, is the mother and legal guardian of Plaintiff, PC, a minor and a former student of Orchard Valley Middle School.

8. Nancy Stevens of 16 N. Mars Drive, Sewell, New Jersey is the mother and legal guardian of NO, a minor, and a student of Orchard Valley Middle School and RO a minor and a student of Orchard Valley Middle School.

9. Bonnie & Donald Tuttle of 1071 Bonnie Blue Circle, Williamstown, New Jersey, are the parents and legal guardians of, JT, a minor and a former student of Orchard Valley Middle School.

10. Donna Wright of 522 Hurffville, Sewell, New Jersey is the mother and legal guardian of ZW, a minor and a former student of Orchard Valley Middle School.

**Defendants:**

11. The defendant, Washington Township Board of Education (hereinafter Board) is located at the Central Administration Building, 206 East Holly Avenue, Sewell, New Jersey.

12. The defendants, John Does (1-100) are Washington Township Board of Education officials, staff and Board Members who knew or should have known about the mold conditions of the Washington Township Public Schools.

13. The defendants, John Doe Companies (1-100) are companies who have participated in remediation, clean up, specifications, engineering, etc. process with regards to the mold in the Washington Township Public Schools.

## BACKGROUND

14. The Orchard Valley school was defectively constructed in the late 80's.

15. From the very beginning this defective construction has created dangerous conditions for all of the occupants.

16. In the early 1990's the toxic and other substances began to affect the health of teachers, staff and students alike.

17. All of the concerns were brought to the attention of the administration, who having just spent a fortune on the construction of buildings, could not face the defects or the cost of correcting the situation, dismissed the complaints.

18. Non budget affecting remedies were implemented -- relocating affected staff and teachers, surface cleaning, shutting off the air conditioning, and pretending there was no problem.

19. For more than 10 years no one advised the parents of the exposure of their children to toxic and other harmful substances.

20. In reaction, the administration, on its own, attempted to unsuccessfully remedy the situation, without ever determining and resolving the cause of the problem; and the toxic and dangerous condition of these buildings was steadily increasing.

21. Finally, just prior to the beginning of the 2003-4 school year the Board's engineer was contracted to identify options to address the humidity at the school - the plan called for a test model of the HVAC system in four classrooms in the spring.

22. Nothing was done to insure the schools were clean for the 2003-4 school year.

23. As a result, the harmful and dangerous conditions in the schools reached epic portions.

24. Children became increasingly ill with symptoms such as headaches, rashes, fatigue, difficulty breathing, some culminating in surgery.

25. Certain classrooms, identical in both buildings, were worse than others; and particularly, the band room wherein instruments were coated with mold and then played by the children.

26. Black substances could be seen in clear pipes and behind paint lifted walls, and children next to vents were repeatedly coughing and requesting to be moved.

27. Trips by students to the nurse were increasing at an alarming rate.

28. Large patches of green mossy type mold was forming on the outside of the building.

29. The staff who was also concerned directed their union to contact the administration, and in December of 2003 the Washington Township Education Association wrote to the Superintendent regarding employees experiencing severe health problems due to mold exposure.

30. The superintendent responded to the WTEA's concerns in January 5, 2004, but did not advise the parents or the students.

31. It was not until three months later and nearly the end of the school year that the school sent a letter advising parents and students that the Orchard Valley Middle School building has mold that has not been abated even after "vigorous and extensive efforts."

32. Unfortunately, by this time children had been overexposed to the toxins, and some were so ill they had been removed from the school.

33. Several others, upon finally knowing the cause of their ongoing ill health, requested removal from the building.

34. Those children, ranging from ages 12-15, some honor students and some with special educational needs were warehoused in a single classroom, wherein they were belittled and not allowed to participate in any extra curricular activities.

35. Knowing that there was a rising concern about certain rooms, the administration, in its arrogance and ignorance, held its 6th grade orientation for the school year 2004-5 in one of worse rooms.

36. At the same time the principal's letter was sent, the board released the reports of a contractor, Core Mechanical, that was hired as a second opinion to its own engineer.

37. According to the new contractor, the toxic and dangerous conditions stem from the HVAC systems, which were not built according to spec, and their report warns "Remedial activities will not be completely effective until the humidity is controlled."

38. Because the school refused to pay for controlling the humidity in the buildings and because Core Mechanical knew that a mere clean up would not correct the situation, it refused to place a bid.

39. This contractor has subsequently indicated that the conditions are worse than the school states; the administration has known for a very long time about the conditions, and the Board refuses to address the cause all because it is too costly.

40. The Board's bid contractor, R.A. West, knowing that the bid specifications did not fully address the issue, nevertheless, drafted bid specifications for the surface cleaning of the building.

41. The first bids for the supposed remediation of the building were opened and rejected as too costly.

42. The second invitation to bid was advertised on June 17, 2004 and a contract for nearly $1,000,000.00 to clean the schools of sick children with tax payer funds was awarded to a company, NPDE, that:

   1. Did not become certified to do public work until only days prior to the award;
   2. Was only allowed to perform work up to $200,000.00 (only 1/5 of the amount it was actually awarded); and
   3. Only had a bond capacity of $1.00.

43. A losing contractor, AltChem, immediately filed suit objecting to the award and the Board, at the expense of the taxpayers, was forced to defend its illegal behavior.

44. The matter was settled by splitting the contract between AltChem and NPDE, even though the Court had opined that the bonding and certification amounts were not waive-able.

45. Also, NPDE remediated, the Orchard Valley School, which was the building which is considered to be the most toxic.

46. Subsequent to the original filing of the complaint the 2004-2005 school year started and teachers complained that the buildings were not properly cleaned.

47. The school humidity fluctuated throughout the year which re-contaminated the HVAC system.

48. Also, in response to the humidity the dehumidifiers were constantly being adjusted whereby at any given time a classroom's

humidity was either too high and increasing the mold exposure or too low thus exposing the building's occupants to increased levels of $CO^2$; as well as all other toxins in the out of control air.

49. As a result, the school after a successful referendum vote awarded a bid to replace the HVAC system.

50. This replacement was done during the 2004-5 school year wherein the children were exposed to further air quality contaminates including dust; fluctuating temperatures and humidity due to the lack of a heating and cooling system which created more mold, $CO^2$, and a contaminated environment in the schools.

51. Plaintiffs' class is so numerous that joinder of all members is impracticable.

52. The questions of law and facts involved in this matter are common to all members of the class. These issues include, but are not limited to:

   1. whether the defendants are legally responsible for the unfit environment in the Orchard Valley Middle School.

   2. whether the environment is plausibly associated with a significant risk of future illness;

   3. whether the reaction of the administration caused a significant risk in the future development of those exposed;

   4. whether medical and developmental monitoring regimens are reasonably necessary to address such risks;

   5. whether plaintiffs are entitled to medical and developmental monitoring relief;

   6. whether defendants were negligent

53. The claims of plaintiffs are typical of those of the class. Indeed, they are identical to the claims of the class.

54. The representative parties will adequately and fairly protect the interests of the class. Casey, Stevens, Tuttle, and Wright are knowledgeable of their obligations as class representatives. They have selected counsel who are highly experienced in the prosecution of complex, class action and "toxic tort" matters.

55. The conduct and failures to act by the defendants as alleged herein have been on the aforementioned grounds are generally applicable to the class. This conduct and failure to act has created impairments which substantially limit major life activities as well as creates severe general health and developmental risks among the members of the class as well as past damages which demands appropriate damages relief and injunctive relief, including the provision of medical and developmental monitoring.

56. The aforementioned common legal and factual questions predominate over any questions affecting only individual members, and a class action is superior to any other method of adjudicating this controversy.

## CAUSES OF ACTION

### COUNT ONE

57. The plaintiffs hereby incorporate and re-allege all of the facts asserted in paragraphs 1-56 of the plaintiffs complaint as if asserted at length herein.

58. Plaintiffs on their own behalf and on behalf of those similarly situated were for an extended period of time exposed to an unsafe environment in the Orchard Valley Middle School.

59. Said negligence and/or intentional behavior included, but were not limited to:

   1. failure to warn the parents and students of the unsafe environment.
   2. negligent and/or intentional failure to properly test and remediate the unsafe environment.
   3. negligent and/or intentional continued exposure to the students of an unsafe environment over a number of years
   4. discrimination by failing to educate students by removing them to inappropriate facilities; failing to provide appropriate educational instruction; failing to recognize the need for appropriate instruction to those affected by the environmental condition; and by not providing appropriate instruction to homebound students.

60. The education clause of the New Jersey Constitution guarantees every child age five to 18 the right to a thorough and efficient public education and an equal educational opportunity.

61. New Jersey statutes require that each school district provide suitable educational facilities including proper school buildings and furniture and equipment.

62. The Board negligently failed to provide suitable facilities for the plaintiffs due to the extensive contamination of mold and other environmental concerns.

63. Defendants' actions also constitute a denial of a thorough and efficient education under the New Jersey Constitution

64. Defendants' actions constitute a denial of a thorough and efficient education under the New Jersey Constitution enforced by and through the New Jersey Civil Rights Act at N.J.S.A. 10:6-1 and 10:6-2.

65. Defendants' actions also constitute a violation of Title 29 U.S.C.A. § 701 et. seq; Section 504 of the Rehabilitation Act of 1973 and the I.D.E.A., Title 20 U.S.C.A. § 1412, et seq.

66. As a result plaintiffs have incurred an impairment which substantially limits major life activity reasonably requiring a regimen of medical monitoring and a significant risk of developmental delays reasonably requiring a regimen of developmental monitoring.

**WHEREFORE**, Plaintiffs, Casey, Stevens, Tuttle, and Wright, demand judgment against the defendants jointly and severally for the following relief:

1. entry of an order permitting this action to be maintained as a class action on behalf of the class specified herein, appointing plaintiffs, Casey, Stevens, Tuttle, and Wright as representatives of the class, and plaintiffs' counsel as counsel for the class;

2. The defendants shall create a fund to pay for the cost of medical monitoring and developmental monitoring for all of

those affected students of Orchard Valley Middle School, who has not surpassed their 20th birthday age on the date the first amended complaint was filed, and who has been affected by the mold and unsafe environment in the aforementioned Orchard Valley Middle School. Said funds shall be under the supervision of the Court and administered by the counsel for the plaintiffs;

3. an entry of an order requiring defendants to bear the cost of publication to members of the class of notification of the need for medical and developmental monitoring and the implementation of the monitoring regimen;

4. Costs and reasonable attorney's fees; and

5. Any and all other relief the court may deem appropriate including but not limited to punitive damages.

**COUNT TWO**

67. Plaintiffs hereby incorporate and re-allege all of the facts asserted in paragraphs 1-66 of the plaintiffs' complaint as if asserted at length herein.

68. Defendants have negligently and/or intentionally created a public nuisance by operating the schools in a manner that is unreasonable.

69. As a result plaintiffs have incurred a significant risk of future illness, reasonably requiring a regimen of medical monitoring.

70. Also, as a result some plaintiffs have been injured developmentally, mentally, physically, and emotionally from exposure to the mold and the unsafe environment in the school and were unable

to return to a contaminated building or a building and suffered damages including but not limited to medical, moving and tuition.

**WHEREFORE**, Plaintiffs demand judgment against the defendants jointly and severally for the following relief:

1. entry of an order permitting this action to be maintained as a class action on behalf of the class specified herein, appointing plaintiffs, Casey, Stevens, Tuttle, and Wright as representatives of the class, and plaintiffs' counsel as counsel for the class.

2. The defendants shall create a fund to pay for the cost of medical monitoring for all of those affected students of Orchard Valley Middle School, who has not surpassed their 20th birthday age on the date this complaint is filed, and who has been affected by the mold and unsafe environment in the aforementioned Orchard Valley Middle School. Said funds shall be under the supervision of the Court and administered by the counsel for the plaintiffs.

3. an entry of an order requiring defendants to bear the cost of publication to members of the class of notification of the need for medical monitoring; implementation of the monitoring regimen.

4. Costs and reasonable attorney's fees; and

5. Any and all other relief the court may deem appropriate including but not limited to punitive damages.

**COUNT THREE**

## (Individual Claims)

71. Plaintiffs hereby incorporate and re-allege all of the facts asserted in paragraphs 1-70 of the plaintiffs complaint as if asserted at length herein.

72. Defendants have negligently and/or intentionally have created a dangerous and/or defective condition which has created a substantial risk of injury to the plaintiffs herein named individually.

73. Defendants knew of this dangerous and/or defective condition and refused to remediate same.

74. As a result, plaintiffs herein named individually have incurred an impairment which substantially limits a major life activity as well as significant risk of future illness and developmental delays, reasonably requiring a regimen of medical and developmental monitoring.

75. Also, as a result, plaintiffs herein named individually have been injured developmentally, mentally, physically, and emotionally from exposure to the mold and the unsafe environment in the school and were unable to return to a contaminated building or a building and suffered damages including but not limited to developmental, medical, moving and tuition.

**WHEREFORE**, Plaintiffs, herein named individually within the above caption demand judgment against the defendants jointly and severally for the following relief:

1. Damages suffered by the plaintiffs, herein named individually including but not limited to developmental, medical, tuition, and moving.

2. Any and all other relief the court may deem appropriate including but not limited damages, punitive damages, attorney's fees and costs of suit against the defendants.

### DEMAND FOR JURY TRIAL

Please take notice that the plaintiffs demand a trial by jury as to all triable issues in this matter.

### DESIGNATION OF TRIAL COUNSEL

Plaintiffs hereby designate Louis Giansante, Esq. as trial counsel pursuant to R.4:25-4, et seq.

GIANSANTE & COBB, LLC

BY: _____
Louis Giansante
Attorney for Plaintiffs

Dated:

### CERTIFICATION PURSUANT TO R.4:5-1

Pursuant to R.4:5-1, I certify that the matter at issue to the best of my knowledge is not the subject of any other pending action or arbitration. All parties known to the Plaintiffs have been joined in the within action.

GIANSANTE & COBB, LLC

BY: _____
Louis Giansante, Esq.
Attorney for Plaintiffs

Dated: